# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CR Holding Liquidating, Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 19-10210 (LSS)<br><br>(Jointly Administered) |
| CR Holding Liquidating, Inc., *et al.*,<br>Plaintiff,<br><br>vs.<br><br>Symphony Talent, LLC,<br>Defendant. | Adv. No. **Refer to Summons** |

## COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 547, 548, AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502

CR Holding Liquidating, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors" or "Plaintiff") in the above-captioned chapter 11 cases, by and through the undersigned counsel, file this complaint (the "Complaint") to avoid and recover transfers against Symphony Talent, LLC (the "Defendant") and to disallow any claims held by Defendant. In support of this Complaint, Plaintiff alleges upon information and belief that:

## NATURE OF THE CASE

1. Plaintiff seeks to avoid and recover from Defendant, or from any other person or entity for whose benefit the transfers were made, all preferential transfers of property that occurred during the ninety (90) day period prior to the commencement of the bankruptcy proceedings of the

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: CR Holding Liquidating Inc. (f/k/a Charlotte Russe Holding Inc.) (4325); CR Holdings Liquidating Corporation (f/k/a Charlotte Russe Holdings Corporation) (1045); CR Intermediate Liquidating Corporation (f/k/a Charlotte Russe Intermediate Corporation) (6345); CR Enterprise Liquidating, Inc. (f/k/a Charlotte Russe Enterprise, Inc.) (2527); CR Liquidating, Inc. (f/k/a Charlotte Russe, Inc.) (0505); CR Merchandising Liquidating, Inc. (f/k/a Charlotte Russe Merchandising, Inc.) (9453); and CR Administration Liquidating, Inc. (f/k/a Charlotte Russe Administration, Inc.) (9456). The Debtors' mailing address is 3111 Camino Del Rio N. Suite 400, San Diego, CA 92108.

Debtors pursuant to sections 547 and 550 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  Subject to proof, Plaintiff also seeks to avoid and recover from Defendant or any other person or entity for whose benefit transfers were made pursuant to sections 548 and 550 of the Bankruptcy Code any transfers that may have been fraudulent conveyances.

2. In addition, Plaintiff seeks to disallow, pursuant to sections 502(d) and (j) of the Bankruptcy Code, any claim that Defendant has filed or asserted against the Debtors or that has been scheduled for Defendant. Plaintiff does not waive but hereby reserves all of its rights and the rights of the other Debtors to object to any such claim for any reason, including, but not limited to, any reason set forth in sections 502(a) through (j) of the Bankruptcy Code.

## JURISDICTION AND VENUE

3. The United States Bankruptcy Court for the District of Delaware (the "Court") has subject matter jurisdiction over this adversary proceeding, which arises under title 11, arises in, and relates to cases under title 11, which are captioned *CR Holding Liquidating, Inc., et al.,* Case No. 19-10210 (LSS) (the "Bankruptcy Case"), pursuant to 28 U.S.C. §§ 157 and 1334(b).

4. The statutory and legal predicates for the relief sought herein are sections 502, 547, 548, and 550 of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

5. This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter final orders for matters contained herein.

6. Venue is proper in the District of Delaware pursuant to 28 U.S.C. § 1409.

7. Pursuant to Local Bankruptcy Rule 7008-1, Plaintiff states that it does consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent

of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## PROCEDURAL BACKGROUND

8.  On February 3, 2019 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9.  The Court has entered an order for joint administration of these cases [Bankr. D.I. 75].

10. On February 14, 2019, Region 3 of the Office of the United States Trustee appointed a seven-member Official Committee of Unsecured Creditors (the "Committee"). No trustee or examiner has been appointed.

## THE PARTIES

11. As more fully discussed in the *Declaration of Brian M. Cashman, Chief Restructuring Officer of Charlotte Russe Holding, Inc., in Support of Debtors' Chapter 11 Petitions and First Day Relief* (the "First Day Declaration"),[2] the Debtors were a leading women's specialty fashion retailer, offering the latest trends at an affordable price point. The Debtors sold merchandise to customers in the contiguous 48 states, Hawaii, and Puerto Rico through their online store, and had 512 brick-and-mortar stores located in various malls, outlet centers, and lifestyle centers.

12. Pursuant to Bankruptcy Code sections 547, 548, 550, 704(a), 1106, and 1107, Plaintiff is authorized and has standing to investigate, pursue, commence, prosecute, compromise,

---

[2] Bankr. D.I. 3.

settle, or otherwise resolve certain causes of action under chapter 5 of the Bankruptcy Code, including the instant avoidance action.

13. Upon information and belief, Defendant was, at all relevant times, a vendor or creditor that provided talent marketing software and solutions to or for Plaintiff. Upon further information and belief, at all relevant times, Defendant's principal place of business is located at 19 West 34th Street, Suite 1000, New York, New York 10001. Plaintiff is informed and believes and on that basis alleges that Defendant is a limited liability company residing in and subject to the laws of Delaware.

## **FACTUAL BACKGROUND**

14. Prior to the Petition Date, Plaintiff, as a women's specialty fashion retailer, maintained business relationships with various business entities, through which Plaintiff regularly purchased, sold, received, and/or delivered goods and services.

15. As a women's specialty fashion retailer, Plaintiff regularly purchased goods from various entities including vendors, creditors, suppliers and distributors. Plaintiff also regularly paid for services used to facilitate its business.

16. The Debtors' financial difficulties that led to the decision to file the voluntary petitions are attributable to a combination of factors, all of which placed significant stress on the Debtors' liquidity position in the months leading up to the Petition Date.[3] The Debtors suffered a dramatic decrease in sales and in-store traffic, and their merchandising and marketing strategies failed to connect with their core demographic. The Debtors shifted too far towards fashion basics, did not effectively reposition their e-commerce business and social media engagement strategy for growth, and failed to rationalize expenses related to store operations to better balance brick-

---

[3] A summary of the Debtors' prepetition operations, debt structure, and factors that led to the Bankruptcy Case are set forth in the First Day Declaration and are incorporated herein by reference.

and-mortar operations with necessary e-commerce investments. At the same time, the retail industry in general experienced significant headwinds, requiring traditional brick-and-mortar retailers to adapt to an increasingly digitally-focused consumed. The Debtors' performance suffered in 2018 as a result of these trends. In the third quarter of 2018, sales declined by $35 million and adjusted EBITDA declined by more than $8 million as compared to the third quarter of 2017. Additionally, in the months leading up to the Petition Date, certain suppliers and trade creditors began to pull their ordinary trade terms and requiring payment upon delivery, placing significant strain on the Debtors' liquidity. As a result, the Debtors began stretching payments owed to certain vendors and landlords, and owed general unsecured creditors approximately $50 million as of January 31, 2019.

17. Pursuant to the schedules filed in this matter,[4] and as more fully discussed in the First Day Declaration, in aggregate, the Debtors' liabilities exceed their assets and therefore general unsecured claims are not expected to be paid in full.

18. As of the Petition Date, the Debtors utilized and maintained a cash management system (the "Cash Management System") to manage the cash flow of operating units in a cost-effective, efficient manner.[5] As of the Petition Date, the Cash Management System consisted of approximately 13 bank accounts of various types, including: a concentration account, an operating account, store depository accounts, disbursement accounts, and pension benefits and holding accounts (collectively, the "Bank Accounts"). The majority of these accounts were

---

[4] *See* Bankr. D.I. 448 – 460.
[5] *See Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Continued Use of Cash Management System, (II) Authorizing Continued Use of Existing Business Forms, (III) Authorizing the Continuation of Intercompany Transactions, (IV) Granting Administrative Priority Status to Post-Petition Intercompany Transactions, (V) Authorizing Use of Prepetition Bank Accounts, Account Control Agreements, and Certain Payment Methods, and (VI) Temporarily Suspending the Requirements of 11 U.S.C. § 345(B)*. Bankr. D.I. No. 9.

maintained at Bank of America, N.A. ("BofA"), although several store depository accounts were held at other banks.

19. Among these bank accounts, disbursement to vendors were made from accounts ending xx609 (the "Operating Account"), xx163 (the "General Disbursement Account"), and xx079 (the "Rent Disbursement Account" and, collectively with the Operating Account and the General Disbursement Account, the "Disbursement Accounts"), all of which were held at BofA by CR Liquidating, Inc., f/k/a Charlotte Russe, Inc. [*See* Bankr. D.I. No. 9]. The Disbursement Accounts were held and maintained by Charlotte Russe, Inc., with Charlotte Russe, Inc. paying payables on behalf of each of the Debtors. The Debtors recorded in their books and records any receipts and/or disbursements made on behalf of a Debtor as intercompany balances. Based on these activities, at times there were intercompany claims owed by one Debtor to another Debtor. The Debtors tracked all transfers in their accounting systems and can ascertain, trace, and account for all intercompany claims and transactions. Therefore, based upon information and belief, the Debtor incurring each debt ultimately caused the payments on each of its debts issuing from the Disbursement Accounts.

20. The Debtors drew upon the Disbursement Accounts to pay for their operational costs, including payment to their vendors, suppliers, distributors, and other creditors, including Defendant.

21. During the ninety (90) days before the Petition Date, that is between November 5, 2018 and February 3, 2019 (the "Preference Period"), the Debtors continued to operate their business affairs, including the transfer of property, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits or otherwise to various entities.

22. Upon information and belief, during the course of their relationship, Defendant and one or more of the Debtors entered into agreements, which are evidenced by invoices, communications and other documents (collectively, the "Agreements"). Upon further information and belief, the Agreements concerned and related to the goods and/or services provided by Defendant to one or more of the Debtors as described in the "Parties" section of this Complaint. The details of each of the Agreements paid for during the Preference Period are set forth on the Statement of Account, which is attached hereto and incorporated by reference as Exhibit A. Such details include "Invoice Number," "Invoice Date," and "Invoice Amount."

23. Defendant conducted business with one or more of the Debtors through and including the Petition Date pursuant to the Agreements.

24. As identified in the Agreements identified on Exhibit A, one or more of the Debtors purchased goods and/or services from Defendant.

25. Plaintiff has completed an analysis of all readily available information of the Debtors and is seeking to avoid all of the transfers of an interest of the Debtors' property made by the applicable Debtor(s) to Defendant within the Preference Period.

26. One or more of the Debtors made transfer(s) of an interest of the Debtors' property to or for the benefit of Defendant during the Preference Period through payments aggregating to an amount not less than $26,220.29 (the "Transfer" or "Transfers"). The details of each Transfer are set forth on Exhibit A attached hereto and incorporated by reference. Such details include "Check Number," "Check Amount," "Check Clear Date," and "Debtor Transferor(s)."

27. During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period. It is Plaintiff's intention to avoid and recover all transfers made by the Debtors of an interest of the Debtors in

property and to or for the benefit of Defendant or any other transferee. Plaintiff reserves the right to amend this original Complaint to include: (i) further information regarding the Transfer(s), (ii) additional transfers, (iii) modifications of and/or revision to Defendant's name, (iv) additional defendants, and/or (v) additional causes of action, if applicable (collectively, the "Amendments"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## CLAIMS FOR RELIEF

### COUNT I
**(Avoidance of Preference Period Transfers – 11 U.S.C. § 547)**

28.     Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

29.     During the Preference Period, the Debtor(s) identified on Exhibit A made Transfers to or for the benefit of Defendant in an aggregate amount not less than $26,220.29.

30.     Each Transfer was made from one or more of the Disbursement Accounts described *supra,* and constituted transfers of an interest in property of the transferring Debtor(s) as identified on Exhibit A.

31.     Defendant was a creditor at the time of each Transfer by virtue of supplying the Debtor(s) identified on Exhibit A goods and/or services identified in this Complaint and in the Agreements, as more fully set forth on Exhibit A hereto, for which the Debtor(s) identified on Exhibit A were obligated to pay following delivery in accordance with the Agreements. See Exhibit A.

32.     Each Transfer was to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1) because each Transfer either reduced or fully satisfied a debt or debts then owed by the Debtor(s) identified on Exhibit A to Defendant. See Exhibit A.

33. Each Transfer was made for, or on account of, an antecedent debt or debts owed by the Debtor(s) identified on Exhibit A to Defendant before such Transfers were made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by the transferring Debtor(s) as set forth on Exhibit A hereto. See Exhibit A.

34. Each Transfer was made while the Debtors were insolvent. Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to 11 U.S.C. § 547(f).

35. Each Transfer was made during the Preference Period, as set forth on Exhibit A.

36. As a result of each Transfer, Defendant received more than Defendant would have received if: (i) the Debtors' cases were under chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by the Debtors' schedules filed in the underlying bankruptcy case as well as the proofs of claim that have been received to date, the Debtors' liabilities exceed their assets to the point that unsecured creditors will not receive a full payout of their claims from the Debtors' bankruptcy estates.

37. In accordance with the foregoing, each Transfer is avoidable pursuant to 11 U.S.C. § 547(b).

## COUNT II
**(Avoidance of Fraudulent Conveyances – 11 U.S.C. § 548(a)(1)(B))**

38. Plaintiff hereby incorporates all previous allegations as though fully set forth herein.

39. To the extent one or more of the Transfers identified on Exhibit A was not made on account of an antecedent debt, was a prepayment for goods and/or services subsequently

received, or was a transfer made by one Debtor without a corresponding intercompany receivable recorded by the Debtor incurring the debt, Plaintiff pleads in the alternative that the Debtor transferor did not receive reasonably equivalent value in exchange for such transfer(s) (the "Potentially Fraudulent Transfers"); and

      A.    The Debtors were insolvent as of the date of the Transfer(s), or became insolvent as a result of the Transfer(s); or

      B.    The Debtors were engaged, or about to engage, in business or a transaction for which any property remaining with Plaintiff or for whose benefit the Transfer(s) was made was an unreasonably small capital; or

      C.    The Debtors intended to incur, or believed it would incur, debts beyond its ability to pay upon maturity.

40. Based upon the foregoing, the Potentially Fraudulent Transfers are avoidable pursuant to 11 U.S.C. § 548(a)(1)(B).

## COUNT III
**(Recovery of Avoided Transfers – 11 U.S.C. § 550)**

41. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Count.

42. Plaintiff is entitled to avoid the Transfer(s) pursuant to 11 U.S.C. § 547(b) and any Potentially Fraudulent Transfers pursuant to 11 U.S.C. § 548 (collectively, the "Avoidable Transfers").

43. Defendant was the initial transferee of the Avoidable Transfer(s) or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Transfer(s) were made.

44. Pursuant to 11 U.S.C.§ 550(a), Plaintiff is entitled to recover from Defendant the Avoidable Transfer(s), plus interest thereon to the date of payment and the costs of this action.

## COUNT IV
### (Disallowance of all Claims – 11 U.S.C. § 502(d) and (j))

45. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

46. Defendant is a transferee of transfers avoidable under sections 547 and 548 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

47. Defendant has not paid the amount of the Avoidable Transfer(s), or turned over such property, for which Defendant is liable under 11 U.S.C. § 550.

48. Pursuant to 11 U.S.C. § 502(d), any and all Claims of Defendant and/or its assignee, against the Debtors' chapter 11 estates must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s), plus interest thereon and costs.

49. Pursuant to 11 U.S.C. § 502(j), any and all Claims of Defendant, and/or its assignee, against the Debtors' chapter 11 estates previously allowed by the Debtors must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant it the following relief against Defendant:

> A. On Plaintiff's First, Second, and Third Claims for Relief, judgment in favor of Plaintiff and against Defendant, avoiding all of the Avoidable Transfers and directing Defendant to return to Plaintiff the amount of the Avoidable Transfers,

pursuant to 11 U.S.C. §§ 547(b), 548, and 550(a), plus interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees;

B. On Plaintiff's Fourth Claim for Relief, judgment in favor of Plaintiff and against Defendant disallowing any claims held or filed by Defendant against the Plaintiff until Defendant returns the Avoidable Transfers to Plaintiff pursuant to 11 U.S.C. § 502(d) and (j); and

C. Granting Plaintiff such other and further relief as this Court may deem just and proper.

Dated: October 18, 2019

**CONNOLLY GALLAGHER LLP**

By: /s/ N. Christopher Griffiths
N. Christopher Griffiths (#5180)
Stephanie S. Riley (#5803)
The Brandywine Building
1000 West Street, Suite 1400
Wilmington Delaware 19801-1671
Telephone: 302-888-6313
Email: cgriffiths@connollygallagher.com
         sriley@connollygallagher.com

*-and-*

Joseph L. Steinfeld, Jr., Esq., MN SBN 0266292
Anastasia Kazmina, Esq., MN SBN 0398419
ASK LLP
2600 Eagan Woods Drive, Suite 400
St. Paul, MN  55121
Telephone: (651) 289-3854
Fax: (651) 406-9676
Email: akazmina@askllp.com

*-and-*

Edward E. Neiger, Esq.
151 West 46th Street, 4th Fl.
New York, NY 10036
Telephone: (212) 267-7342
Fax: (212) 918-3427

*Counsel for Plaintiff, CR Holding Liquidating, Inc., et al.*